Stanard, J.
A careful examination of the record has resulted in the conviction that the transaction between these parties, which the appellee insists was, and the court below has adjudged to be, a loan secured by mortgage, was a conditional sale and purchase. This to me is made manifest by the terms of the bill of sale, coupled with the evidence of Parham and Myriclc. The real contract, as understood by both parties and the witnesses, was a sale of the slaves at a price fairly fixed to the satisfaction of both parties; the one intending to buy, and the other being willing to sell; the purchaser advancing a part of the purchase money ; the seller reserving the right to abrogate the con *262 tract of sale by returning the money so advanced, with interest, at or before a particular time; and if not so abrogated, the contract to be completely executed, by the purchaser paying the residue of the purchase money, and the seller surrendering the possession of the slaves. To give the relief sought by the appellee, would be to give the active assistance of a court of equity to a party seeking to absolve himself from a fair contract. This ought not to be done.
My opinion therefore is, that the decree of the court of chancery is erroneous and ought to be reversed: and as the appellant avows his willingness to pay the balance of the purchase money; and as, from delay by reason of the pursuit of a supposed right of redemption, and the sanction of that claim by the court below, and the possession by the appellant of the slaves, there may be some difficulty in the recovery of it by a suit at law, which in strictness was the proper remedy,— therefore, to prevent the occasion of future litigation between the parties, I think it fit that a decree should be rendered in favour of the appellee for the balance •of the purchase money and interest, but without costs.
Parker, J.
The bill was filed in this case to redeem certain slaves alleged to have been conveyed to the defendant as a security for the repayment of a loan of 393 dollars 89 cents. The answer, which is responsive to the bill, denies that the deed for the slaves was intended merely as a security for money loaned. It avers that the respondent refused to advance his money on the terms proposed by Green of pledging a slave for the repayment; but that the proposition made and accepted was, that if Green would sell him a negro woman named Creasy (whose husband he owned) with her two children, for a price ascertained, he would advance the sum then required by Green, in part payment, and Green should be at liberty to return it on or before the *263 25th of the ensuing December, and avoid the contract; but if not, that he would pay the balance, and take the slaves in possession.
The depositions of Parham and Myriclc go far to verify this statement. Green had applied to Parham to get from Moss the money he wanted, and said he would give a bill of sale for a negro woman, to secure the repayment with interest at the following Christmas, and that if the money was not paid at that time, Moss should have the negro. When Parham made this proposition known to Moss, he at first refused to have any thing to do with Green, but after some conversation said, if Green would let him have Creasy and her two children, he would advance the money he wanted, upon condition that he would let him leave them at a fair value. That value was then agreed on between Parham the agent of Green, and Moss, at six hundred dollars, and it was arranged that Moss should, if Green approved it, advance the sum then required by Green, and take a conveyance of the slaves, with a stipulation that if the sum so advanced was returned by Christmas with interest, Mass would release the slaves, but if the money was not then returned, he would make up the sum of 600 dollars and keep them. Parham informed Green of this proposition and valuation, who said he was willing to comply with it; that Creasy was the negro woman he preferred to sell, and that he thought 600 dollars a fair price for her and her children. After this, Parham took no further part in the transaction, except, as he says, to write a letter to Moss, (which it does not appear that he received,) informing him of Green’s acceptance of his terms.
The bill of sale was written and attested by Howell Myriclc. He proves, that he was requested by Moss and Green to write a conditional hill of sale for Creasy and her two children; that Moss had previously bought, at a sheriff’s sale made-by Myriclc, a negro woman belong *264 ing to Green, named Rhoda; and it was agreed, on the occasion referred to, that the price paid for Rhoda was to be a part of the consideration money for Creasy and her children, and that the balance of the consideration money in the conditional bill of sale mentioned should be paid, as it was in fact paid, to MyricJc. The bill of sale expresses the consideration to be 393 dollars 89 cents, and is in the common form of such instruments, but reserving liberty to Green to repay the said sum of 393 dollars 89 cents, with interest, on the 25th of the ensuing December, in which event the sale was to be void. If, however, Green neglected or refused to do so, then he bound himself, upon Moss’s paying him the additional sum of 206 dollars 11 cents (to make up the price agreed on of 600 dollars) to deliver Creasy and her children to Moss, and to make him a complete title therefor. No time is fixed for this additional payment, but it must necessarily have been after the 25th of December, because, until that day expired, it could not be known whether Green would pay the 393 dollars 89 cents or not.
Green failed to pay or tender the money at the time stipulated, but on the 27th of December-, merely said to Moss he was ready to settle with him, if he would pay him for his board; which it seems had been due, if due at all, some eight or nine years before. Moss got possession of the slaves, and on the same 27th of December, offered to pay the additional 206 dollars 11 cents; which Green refused, and in 1821 brought this suit.
Upon this state of facts, the question propounded to the court is whether this transaction between Green and Moss was a mere mortgage, or a conditional sale ? If it was in its inception a mortgage, I agree that the court will not permit it to be converted into an absolute purchase, for the default in the payment of the mortgage money at the appointed time. The rule is, once a mart *265 gage always a mortgage, to which the right of redemption is inseparably incident, and cannot be restrained by any clause or agreement whatever made at the time of the loan. Willett v. Winnell, 1 Vern. 488. (which, by the very terms of the statement, was admitted to be a borrowing of money and a mortgage to secure it.) But if the intention of the parties is to do something more than provide a security for money loaned or advanced, and to make a conditional sale if a further sum is advanced or the first sum is not repaid, there is certainly no rule of law which authorizes a court to control that intention. Thus in the case of Newcomb v. Bonham, 1 Vern. 8. 214. 232. where A. made an absolute conveyance for a sum of money paid, and by another deed of equal date the lands were made redeemable at any time during the life of the grantor, the final decision of the court of chancery, affirmed in the house of lords, was that the estate was absolute in the grantee after the death of the grantor; there being proof that such was the intent of the parties, and their understanding at the time. So in the case of Chapman's adm’x v. Turner, 1 Call 280. an instrument in the following words was held to be a conditional sale, irredeemable after the day fixed for the payment of the money loaned : “ I this day received of mr. Jno. Turner the sum of ¿£30. and put a negro woman named Hannah in his hands as security, and if the said ¿£30. is not paid at or before next July Hanover court, the said Turner is to have the said negro for the said ¿£30.” (Signed) “Richard Chapman.” The words “and put a negro Sec. in his hands as security” were considered to have effect by construing the sale as defeasible till July Hanover court, (during which time the negro would be only a security,) and after-wards absolute : whereas the other words of the agreement, “and if the said ¿£30. is not paid at Sec. Turner is to have the said negro for the said ¿£30.” would have no effect, (judge Roane said,) without de *266 creeing the sale absolute after default in nonpayment. It was also said in that case, that no loan was contemplated between the parties, as Turner had refused to lend, wishing to invest his money in property. That case is stronger against the construction placed on it by the court than the one at bar, because the ¿£30. was not proved to have been the value of the negro, agreed on between Turner and Chapman, or to have been a fair value; although, as judge Roane said, it did not fall short of the general estimate of the witnesses “ in any excessive degree.” Here, it is proved that the 600 dollars was the full value of the slaves, and that Oreen was willing to sell them at that price, subject to his right to return the portion of the money paid, within a stipulated time. In the other circumstances, the cases are alike. The sale was defeasible until christmas, and until that period the slaves would be considered as a security; but if, after that, it is not deemed to be absolute, we shall have to reject the subsequent words of the agreement, and plainly violate the intention of the parties. In this case, too, Moss refused to lend money and take a bare security. His object was to buy the wife of a slave he owned, but to give time to Oreen to return the money advanced. That object was wrell known to Oreen, who consented to sell on the terms proposed. Thus the cases are similar in every circumstance relied on by the judges in Chapman’s adm’x v. Turner, to sustain their opinions that the transaction in that case was a conditional sale; and there are, in the case at bar, facts proved which tend to strengthen such a conclusion. Besides the fact, already alluded to, of the value of the slaves being arranged and settled with an express reference to a sale, the parties applied to Myriclc to write a conditional bill of sale, eo nomine; and it must be, intended that they understood the difference between such an instrument and a mere security for money .lent.
*267 Another case in this court, confirmatory of this view of the case before us, is that of Roberts's adm’r v. Cocke ex’or &c. 1 Rand. 121. It was a loan of money,—a pledge for its repayment by a given day, with interest,— and a stipulation that if not repaid at the day, Roberts should have the negro. It appearing that the £ 100. mentioned in the bill of sale was probably the agreed price of the negro, as evidenced by the subsequent acts of the parties, no redemption was permitted. To the same effect is the case of Leavell v. Robinson, 2 Leigh 161.
In the case of Robertson v. Campbell & Wheeler, 2 Call 421. judge Pendleton observed that it was often a nice and difficult question to draw the line between mortgages and conditional sales. “ The great desideratum,’’ says he, “ which this court has made the ground of their decision, is whether the purpose of the parties was to treat of a purchase, the value of the commodity contemplated, and the price fixed; or whether the object was a loan of money, and a security or pledge for the repayment intended.”
Tried by these criteria, or by the authorities I have cited, I think the transaction between Moss and Green amounted to a conditional sale. The object of the security was not merely to compel repayment, but a sale and purchase was evidently intended, subject to the right of the vendor to defeat it.
That the agreement was executory does not render it the less binding: nor does the fact that the possession was for a time retained by Green, (which, by the way, was the reason why interest was to be allowed if the money advanced was returned,) change the nature of the transaction; for when Moss asked or obtained possession of the slaves, he was bound to pay the additional sum ; while Green was not bound to return any part of the 393 dollars 89 cents if he did not choose to do so, and although the slaves had died subsequent to *268 the 25th December, he would still have been entitled to the additional sum, and the loss would have fallen on Moss.
I am therefore of opinion to reverse the decree, and enter one for the balance only of the purchase money, with interest.
Cabell, J. concurred.